UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HARVEY KATZENBERG, et al.,

             Plaintiffs,

    -against-

DERVAL LAZZARI, et al.,

             Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

04 CV 5100 (CBA)

On November 24, 2004, plaintiffs Harvey Katzenberg and Pearl Katzenberg commenced

this action against Derval Lazzari, as Trustee of the Acme American Repairs, Inc. Pension Trust

(the "Trust"), Acme American Repairs, Inc. ("Acme"), and the Trust (collectively, "defendants"),

alleging that defendants had violated various provisions of the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), by failing to pay benefits owed to

plaintiffs under the Plan and by failing to provide certain information to which plaintiffs claim

they were entitled under the statute. In or about August 2005, defendants offered to pay plaintiff

Pearl Katzenberg certain pension benefits in satisfaction of her claims in this suit. (See Defs.'

Letter dated Dec. 19, 2005 at 1). Through counsel, Ms. Katzenberg subsequently elected to be

paid under Option B of the Plan, with a 50% Joint and Survivor Annuity. (Pls.' Letter dated

Sept. 13, 2005). Currently pending before this Court is plaintiff Pearl Katzenberg's request for

an award of legal fees and expenses in the amount of $34,561.75.[1]

---

    [1]In his September 13, 2005 letter relaying Ms. Katzenberg's settlement decision,
plaintiffs' counsel indicated that although the attorneys' fees accrued in the matter totaled
$28,302.50, he was willing to accept one-half of that amount, or $14,151.25, in fees due for work
performed on Ms. Katzenberg's behalf. (Pls.' Letter dated Sept. 13, 2005). Ms. Katzenberg's
current request of fees and costs in the amount of $34,561.75 is taken from plaintiffs' counsel's

A. Attorneys' Fees - ERISA

ERISA provides that "[i]n any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A court's decision to award fees is generally based on five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987). "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." Id. at 872. Indeed, the Second Circuit has indicated that "attorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so." Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan, 718 F.2d 515, 523 (2d Cir. 1983).

B. Analysis of Plaintiff's Entitlement to Fees

Defendants oppose plaintiff's request for fees, contending that this was a needless lawsuit, as demonstrated by the fact that plaintiff ultimately agreed to resolve the issues in the lawsuit by accepting a benefit option offered in an August 22, 2005 letter sent by the Plan actuaries. (See Defs.' Letter dated Dec. 19, 2005). Defendants contend that rather than

submission dated September 29, 2005. (Pls.' Letter dated Sept. 29, 2005).

accepting one of the options offered to Ms. Katzenberg in a previous letter, counsel instead chose to file this lawsuit seeking Plan documents that defendants contend were previously produced to Mr. Katzenberg. (Id.)[2]

Plaintiff disagrees that this was a needless lawsuit, and contends that she was compelled to sue for her pension benefits because defendants failed to provide the pension documents necessary to enable her to evaluate her rights under the Plan and to consider an offer that was made by the defendants to resolve the issue. (Pls.' Letter dated Nov. 10, 2005 at 1). Specifically, plaintiffs' counsel asserts that in the spring of 2004, he began discussing plaintiffs' claims for pension benefits with Adam Wilner, Esq., who was defendants' counsel at the time. (Id. at 1-2). Although Mr. Wilner was asked to provide a copy of the pension plan so that plaintiffs could consider whether to accept a lump sum roll-over of their pension money into their individual retirement accounts, no copy of the Plan was ever provided. (See id. at 2). On August 17, 2004, Mr. Wilner sent plaintiffs' counsel a letter indicating that Mr. Katzenberg had forfeited his benefits and that Ms. Katzenberg "will not be able to receive a lump sum distribution at this time due to the funding status of the plan." (Id., Ex. A). The letter also indicated that Ms. Katzenberg could elect to receive a reduced monthly benefit, payable immediately, or the "vested monthly benefit she had accrued at the time of her termination of employment," payable at age 65. (Id.) However, because Mr. Wilner failed to send a full set of pension documents or information

---

[2]In a previous opinion, this Court recommended that the district court deny Mr. Katzenberg's motion for summary judgment as to his second cause of action, which alleged that the defendants violated ERISA by failing to provide certain benefit information and Plan documents. (See Report and Recommendation dated March 12, 2007 ("Report"), at 34-40). Among other things, the Court indicated that there were material issues of fact as to whether a separate "summary plan description" was ever prepared or disseminated to anyone. (Id. at 39-40). The district court adopted the Report and Recommendation by Order dated March 30, 2007.

concerning the Plan's funding status, Ms. Katzenberg could not evaluate the options detailed in defendants' counsel's letter. (Id. at 3).

On October 19, 2004, plaintiffs made one final attempt to resolve the matter by sending a letter inquiring as to the defendants' position with respect to plaintiffs' benefits. (Id., Ex. H). When they received no response, plaintiffs filed suit. (Id. at 3). After the litigation was commenced, Mr. Sandler appeared for defendants and took the position that Ms. Katzenberg was not entitled to receive any benefits at that time. (Id. at 3, Ex. J ¶¶ 7, 12). He represented to Judge Amon that Ms. Katzenberg was "not entitled to get her pension money until she reaches age 65." (Id. at 3, Ex. K at 3). He also argued that "because of the embezzlement [at issue in this case,] . . . she is legally . . . not legally entitled to it at this point." (Id. at 3, Ex. K at 6-7). Plaintiffs contend that although defendants' answer raises no affirmative defenses as to Ms. Katzenberg (see id. at 4),[3] defendants' counsel nonetheless insisted that, contrary to Mr. Wilner's earlier letter offer, Ms. Katzenberg was not entitled to receive any form of benefits prior to age 65. (Id.)

Plaintiffs' counsel contends that "Mr. Sandler . . . made no effort whatsoever to acquaint himself with the prior exchanges between Mr. Wilner and [plaintiffs' counsel's] office." (Id. at 3). Plaintiffs further argue that they were forced to continue the litigation for approximately eight months because counsel failed to familiarize himself with the prior proceedings. (Id. at 4). Ultimately, defendants conceded that Ms. Katzenberg was entitled to receive a reduced monthly benefit, which she accepted, and defendants agreed to pay the full amount of Ms. Katzenberg's

---

[3]The Court notes that defendants appear to have raised the failure to exhaust administrative remedies as an affirmative defense to both plaintiffs' claims for benefits. (See id., Ex. J ¶ 40).

retroactive benefits. (See id.) Based on these circumstances, plaintiffs argue that they are entitled to receive attorneys' fees.

Having been involved in supervising the discovery in this case and having issued the Report and Recommendation on Mr. Katzenberg's motion for summary judgment, the Court concludes that, contrary to defendants' contentions, this was not a "needless" lawsuit, nor was plaintiffs' request for Plan documents intended to harass the Plan administrators. (Defs.' Letter dated Dec. 19, 2005 at 1-2). Defendants' counsel concedes that he "made a mistake of law when [he] denied Ms. Katzenberg's right to commence an immediate pay-out of her $80 a month in pension benefits." (Id. at 2). He suggests that a "cordial response" to Mr. Wilner's August 17, 2004 letter would have resolved the controversy relating to Ms. Katzenberg's claim and that no lawsuit would have been necessary. (Id.) However, it is clear that after receiving the defendants' August 17, 2004 letter, plaintiff made a reasonable request to review the Plan documents to ascertain if, in fact, the letter accurately conveyed the options available to Ms. Katzenberg. When the information was not forthcoming, plaintiffs' counsel wrote another letter asking that defendants clarify their position with respect to Ms. Katzenberg. When no response was received, plaintiff commenced suit. While it may have been possible to have resolved the matter at the time of plaintiffs' letter or even shortly after the suit was filed, it was defendants' counsel's representation that Ms. Katzenberg was not entitled to any benefits until she reached age 65 that compounded the problem and produced the bulk of the attorneys' fees relative to Ms. Katzenberg. Counsel's error was exacerbated by the failure to explain the discrepancy between his position and the earlier representation made by defendants' former counsel. Had this error on the part of defendants' counsel been recognized and corrected earlier, he could have eliminated

5

approximately eight months of unnecessary legal fees relating to Ms. Katzenberg's claim.

Accordingly, the Court concludes that Ms. Katzenberg is entitled to receive reasonable fees and costs related to the pursuit of her claims.


C. Calculation of Fees

The Second Circuit has held that any attorney who seeks compensation through the courts "must document the application with contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986). The records must be maintained with sufficient specificity "to enable the Court to determine whether the hours billed were duplicative or excessive." Dailey v. Societe Generale, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996), aff'd in relevant part, 108 F.3d 451 (2d Cir. 1997). In accordance with the requirements set forth in Carey, counsel has provided the Court with what appear to be the monthly invoices sent to the plaintiffs, which set forth the date on which services were performed, a description of the nature of the services performed and the time spent by each attorney in connection with the plaintiffs' claims. (See Pls.' Letter dated Sept. 29, 2005).

Although the Court has determined that plaintiff Ms. Katzenberg is entitled to receive certain fees for services performed by counsel in pursuing her claims, a review of counsel's billing records demonstrates that not all of the fees requested relate solely to Ms. Katzenberg's claim. Indeed, in the cover letter to which plaintiffs' counsel's billing records are attached, counsel indicated that he was submitting the "total bill for this matter." (Id.) Thus, this Court

has reviewed the invoices submitted by plaintiffs' counsel, Moss & Kalish, PLLC, in order to determine what a reasonable attorneys' fee would be for the work done in connection with Ms. Katzenberg's claims.[4]

### 1) The Lodestar

In calculating a reasonable fee award, courts first determine a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994); F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987). "While there is a strong presumption that this amount represents a reasonable fee," Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), the lodestar figure is subject to adjustment by the court depending on a variety of factors. See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Moreover, it is well-established that "'[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1160 (quoting Hensley v. Eckerhart, 461 U.S. at 437). The ultimate determination is whether, considering all of the circumstances, the fee requested is "reasonable." See Hensley v. Eckerhart, 461 U.S. at 433-37. However, "the focus of the district courts is no longer on calculating a reasonable [total] *fee*, but rather on setting a reasonable *hourly rate*, taking account of all case-specific variables."

---

[4]Given that Mr. Katzenberg's claims are still being litigated, it is premature to consider whether attorneys' fees should be awarded for work performed on his behalf.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 169 (2d

Cir.), amended and superceded at - - - F.3d - - -, No. 06 CV 0086, 2007 WL 2004106, at *6 (2d

Cir., July 12, 2007) (adding a footnote regarding pro bono representation).


2) Reasonable Hourly Rates

The most important issue that the Court must consider before recommending a reasonable

attorneys' fee is whether the hourly rates charged are reasonable. Neither party has addressed

this issue, but the Court, in recommending a "reasonable" fee, has an obligation to review the

rates charged so they are "'in line with those [rates] prevailing in the community for similar

services of lawyers of reasonably comparable skill, experience, and reputation.'" Cruz v. Local

Union No. 3, 34 F.3d at 1159 (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); see

also Rotella v. Board of Educ., No. 01 CV 0434, 2002 WL 59106, at *2 (E.D.N.Y. Jan. 17, 2002)

(stating that "this court finds that the prevalent market rate in this district is in the range of $200

to $250 for partners and between $100 to $200 for junior and senior associates"). Indeed, the

Second Circuit has held that the rates used to calculate the "lodestar" must be in line with those

rates prevailing in "'the district in which the court sits.'" Luciano v. Olsten Corp., 109 F.3d 111,

115 (2d Cir. 1997) (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d

Cir. 1983)); see also Arbor Hill v. County of Albany, 369 F.3d 91, 95–96 (2d Cir. 2004). At the

same time, however, the Second Circuit has made it clear that "[a] district court's 'choice of rates

[is] well within [its] discretion.'" Cruz v. Local Union No. 3, 34 F.3d at 1159 (quoting Cabrera

v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994)).

The Second Circuit has indicated that courts may consider evidence of prevailing rates for

similar services beyond the fee application itself. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989). In addition to the parties' evidentiary submissions, the Court may also consider its own experience and familiarity with the case and with rates generally charged. However, as the court noted in Blum v. Stenson:

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - - in addition to the attorney's own affidavits - - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

465 U.S. at 895 n.11.

One factor considered by the courts as evidence of a reasonable rate is the rate paid by counsel's fee-paying clients. Missouri v. Jenkins, 491 U.S. 274, 286 (1989); Crescent Publ'g Group, Inc. v. Playboy Enterprises, 246 F.3d 142, 151 (2d Cir. 2001); Luciano v. Olsten Corp., 925 F. Supp. 956, 962 (E.D.N.Y. 1996), aff'd, 109 F.3d 111 (2d Cir. 1997). Here, apart from the invoices sent to plaintiffs, plaintiff's counsel has not presented any evidence to substantiate the conclusion that the fee rates requested are based on rates normally paid by counsel's fee-paying clients, thus providing "a strong indication of what private parties believe is the 'reasonable' fee." Crescent Publ'g Corp., Inc. v. Playboy Enterprises, 246 F.3d at 151. However, the Court may look to what a reasonable paying client would be willing to pay in determining the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d at 169. In doing so, courts are directed to consider, inter alia:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6)

9

> whether the fee is fixed or contingent; (7) the time limitations
> imposed by the client or the circumstances; (8) the amount involved
> in the case and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the undesirability of the case; (11)
> the nature and length of the professional relationship with the client;
> and (12) awards in similar cases . . .

484 F.3d at 166 (internal citation omitted); see also Warner Bros. Entm't Inc. v. Carsagno, No.

06 CV 2627, 2007 WL 1655666, at *7 (E.D.N.Y June 4, 2007) (applying some of these Arbor

Hill factors).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . . , the timing demands
> of the case, whether the attorney had an interest (independent of
> that of his client) in achieving the ends of the litigation or initiated
> the representation himself, whether the attorney was initially acting
> pro bono . . . , and other returns (such as reputation, etc.) the
> attorney expected from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d at 164; see

also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y.

May 8, 2007) (applying some of these Arbor Hill factors).

Having reviewed the various cases cited by both parties, and being familiar with the

prevailing rates in the community through the numerous fee applications reviewed by this Court,

see Assoc. for Retarded Citizens of Conn., Inc. v. Thorne, 68 F.3d 547, 554 (2d Cir. 1995)

(holding that "a [court] may 'rely in part on [its] own knowledge of private firm hourly rates in

the community'") (internal citation omitted), it is clear that the range of "reasonable" attorney

fee rates varies depending on the type of case, the nature of the litigation, the size of the firm, and

the expertise of its attorneys. The rates range from $175 per hour, which is the rate that has been

applied in the context of default motions, see, e.g., Schwartz v. Chan, 142 F. Supp. 2d 325, 332 (E.D.N.Y. 2001) (finding that $175 per hour was reasonable in action resulting in default judgment); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 382, 397 (E.D.N.Y. 2000) (increasing from $175 per hour to $200 per hour the rate for a sole practitioner in a gender discrimination litigation resulting in default judgment) to rates of up to $540 per hour for partners in a major law firm. See, e.g., Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, Inc., 190 F. Supp. 2d 407, 425–29 (E.D.N.Y. 2002) (finding reasonable, in the context of tobacco litigation, fees of $540 per hour for senior partners at Dewey Ballantine LLP; $312 to $449 per hour for other partners; $273 per hour for associates; and $122 per hour for legal assistants); see also Weil v. Long Island Sav. Bank, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) (finding counsel's "customary rates" of $371 to $450 per hour for a senior partner to be justified in a consumer class action); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (finding counsel's customary hourly rates of $520.69 for partners and $278.50 for associates in an intellectual property action to be "'commensurate with the rates prevailing in the community'" for that type of case) (quoting Aris Isotoner, Inc. v. Dong Jin Trading Co., 17 U.S.P.Q.2d 1017, 1024 (S.D.N.Y. 1989)), aff'd, 29 Fed. Appx. 46 (2d Cir. 2002); Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (applying a rate of $425 per hour for the partner and $240 per hour for a fifth year associate in a civil rights action).

Other fee awards have been closer to the range of $300 to $350 per hour. See, e.g., General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) (construing both statutory and contractual entitlement to fees and finding reasonable hourly rates of $315 to $375 for partners, $225 to $295 for senior associates and $140 to $225 for junior

associates); <u>Leibovitz v. N.Y. City Transit Auth.</u>, No. 95 CV 3860, 1999 WL 167688, at *1 (E.D.N.Y. Feb. 29, 1999) (awarding rate of $300 per hour to experienced attorney in employment discrimination litigation), <u>rev'd on other grounds</u>, 252 F.3d 179 (2d Cir. 2001); <u>see also</u> <u>M.L v. Board of Educ. of the City of N.Y.</u>, No. 02 CV 4288, 2003 WL 1057476, at *2–3 (S.D.N.Y. Mar. 10, 2003) (awarding fees of $350 to $375 per hour for lead counsel and $225 per hour for associates in administrative challenge to educational program of handicapped child).

Although the relevant market for evaluating the reasonableness of an attorney's fee has been described as the Eastern District of New York, cases in the Eastern District have recognized that "it is not improper or unreasonable to apply Southern District rates to litigation in this district, at the judge's discretion, even if the litigation has taken place not in Brooklyn, a borough of New York City, but in Central Islip, a satellite courthouse of the Eastern District." <u>Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.</u>, 215 F.R.D. 60, 63 (E.D.N.Y. 2003) (applying rates of $280 per hour for a senior associate, $180 per junior associates, and $110-$115 for paralegals, and reducing the partners' rate from $510 per hour to $400), <u>aff'd</u>, 189 Fed. Appx. 3 (2d Cir. 2006).

Here, Mr. Kalish, a named partner in the firm, charges at the rate of $410 per hour and Mr. Gelfarb, presumably an associate in the firm, charges at $290 per hour. These rates appear to have been applied throughout the litigation, beginning in the fall of 2004 and continuing through the date of the fee application. Unfortunately, counsel has not provided the Court with any information about the background and experience of Mr. Kalish, or more importantly, the background and experience of Mr. Gelfarb, the associate who performed the majority of the work on the file. Not only is it unclear whether he was a senior or junior associate at the firm, but

12

there has been no information provided about the size of the firm, the nature of its practice, or its standard billing rates. Accordingly, in the absence of this critical information, the Court concludes that a reasonable rate for Mr. Kalish is $325 per hour[5] and for Mr. Gelfarb $200 per hour.

### 3) Reasonable Time Expended

#### (a) Allocation of Time

The Court must assess, based on a review of the description of services performed, which time entries should be attributed to work performed on Ms. Katzenberg's behalf. At best, if plaintiffs' claims were identical, Ms. Katzenberg would be entitled to reimbursement for 50% of the total amount of fees reasonably expended on the litigation. However, in reviewing the billing entries and performing the allocation of time between the two plaintiffs, the Court recognizes that Mr. Katzenberg's claims are complicated by defendants' allegations that he engaged in certain acts of malfeasance. Therefore, the work performed in connection with responding to defendants' counterclaims, including any related discovery, is more properly charged to Mr. Katzenberg.

#### (b) Excessive Hours

The law is clear that when reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d at

---

[5]There are also two entries for Mr. Moss, who the Court assumes is the other named partner in the firm. The Court has calculated his time at the same rate as that used to calculate Mr. Kalish's time.

425 (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 433). In evaluating time sheets and expense records, some courts have dealt with the problem posed by excessive or redundant billing by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar. <u>See, e.g.</u>, <u>Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C.</u>, No. 96 CV 4489, 2000 WL 130637, at *6 (E.D.N.Y. Feb. 4, 2000); <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558, 564 (2d Cir. 1991) (affirming the lower court's decision to subtract 32 hours for irrelevant research and for work performed on post-trial motions before calculating the lodestar).

However, the Second Circuit has stated that the district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994); <u>see also</u> <u>Daiwa Special Asset Corp. v. Desnick</u>, No. 00 CV 3856, 2002 WL 31767817, at *5 (S.D.N.Y. Dec. 3, 2002) (reducing fee request of $2.2 million by 50% due in part to excessive billing). Particularly where the billing records are voluminous, "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." <u>Amato v. City of Saratoga Springs</u>, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) (citing <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992)). The court in <u>Daiwa Special Asset Corp. v. Desnick</u> also recognized that what may be a "reasonable" attorneys' fees award in the context of an order requiring a losing party in a litigation to pay the prevailing party "is not the same as the reasonableness of a bill that a law firm might present to its own paying client." 2002 WL 31767817, at *2 (citing <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986)). Thus, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience

14

generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d at 1153 (internal citations omitted).

Accordingly, some courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1146 (finding percentage reductions to be an acceptable means for reducing fee applications); see also Levy v. Powell, No. 00 CV 4499, 2005 WL 1719972, at *7-9 (E.D.N.Y. July 22, 2005) (applying percentage reductions to various attorneys' fee requests); Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. at 64-65 (applying 10% reduction to excessive fee application); Rotella v. Board of Educ. of City of New York, No. 01 CV 0434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another attorney's fees by 30% for unnecessary and redundant time).

Having reviewed plaintiffs' counsel's invoices, the Court has identified several instances in which the amount of time charged seems excessive in light of the tasks performed. In the invoice dated December 31, 2004, for example, there are three entries in which David B. Gelfarb, Esq., logged various amounts of time on activities relating to service and electronic filing. (See Pls.' Letter dated Sept. 29, 2005 at 5). Specifically, within a six day period, he billed .80 hours for "Draft, review and revise certifications of service and cover sheets; review court website," .90 hours for "Review court notice re filing of certificates of service and other documents; research and review court website and rules re electronic filing; review certificates of service," and .20 hours for "Review court website re filing of certificates of service." (See id.)

In another monthly invoice, Mr. Kalish listed four separate entries concerning a conference with this Court, all logged on the same day, including 1.30 hours of work described as "Conference with Magistrate Pollack [sic] re: Erisa claims" and three separate entries for 1.20 hours each with the description "Conference with Magistrate Pollack [sic] re: Erisa counterclaims." (See id. at 10). When added together, these four entries total 4.90 hours logged in a single day for a court conference. For that same day, Mr. Gelfarb lists, as a single entry, 2.80 hours described as "Telephone conference with MLK[6] and Mr. Katzenberg; travel to and from[7] and attendance at conference before Mag. Judge Pollak; review file and pleadings; research re law governing pension forfeitures (50% complaint; 50% counterclaims)." (Id.) Based on Mr. Gelfarb's entry and the Court's records, which indicate that the conference lasted no more than 30 minutes, the Court concludes that Mr. Kalish's four entries describing the same conference were an unintentional error.

Given the small quantity of entries documenting excessive time, the Court respectfully recommends that, in lieu of an across-the-board reduction, those particular entries simply be reduced by 50%. (See Table A infra). As for Mr. Kalish's duplicative time entries, the Court has compensated him for 1.20 hours of time billed for the conference before this Court. (See id.)

(c) Vague Entries

Another problem with plaintiffs' counsel's records is that a number of entries are too vague for the Court to determine whether the time was spent pursuing Ms. Katzenberg's claims

_____

[6]The initials "MLK" refer to Mr. Kalish.

[7]See discussion infra regarding charges for travel time.

16

or whether the time logged was reasonable in certain instances. One example of this deficiency, which appears throughout counsel's records, are entries that read "research re ERISA issues." (See, e.g., Pls.' Letter dated Sept. 29, 2005 at 16).

Courts have reduced fee awards where the billing entries were overly vague. See, e.g., F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265 (rejecting entries for "Rev. Docs" and "Clients re testimony"); Amato v. City of Saratoga Springs, 991 F. Supp. at 65-66 (reducing award for vagueness due to entries such as "review discovery response," "prepare deposition questions," and "review research"); Dailey v. Societe Generale, 915 F. Supp. at 1328 (stating that entries such as "'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive"); Pressman v. Estate of Steinvorth, 886 F. Supp. 365, 367-68 (S.D.N.Y. 1995) (denying compensation for entries such as "telephone conversation," "prepare correspondence," or "review of file" where no associated legal matter was specified); Orshan v. Macchiarola, 629 F. Supp. 1014, 1019-20 (E.D.N.Y. 1986) (reducing fees for such entries as "prepare correspondence" and "review correspondence").

Where the fee application contains numerous vague entries, courts routinely impose an across-the-board reduction. See, e.g., Aiello v. Town of Brookhaven, No. 94 CV 2622, 2005 WL 1397202, at *2-3 (E.D.N.Y. June 13, 2005) (applying 15% reduction to attorneys' fees where billing statements were "rife with vague entries"); Mr. X v. New York State Educ. Dep't, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) (reducing fee award by 20% to account for vague and duplicative time entries); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% due, in part, to insufficient descriptions of work

17

performed), rev'd and remanded on other grounds, 38 F.3d 651 (2d Cir. 1994). In this instance, based on the minimal number of vague entries, the Court recommends that the vague entries be reduced by 50%. (See Table A infra).

The Court notes that according to Mr. Gelfarb's entry, some of the time was spent in travel to and from the Court. The courts have clearly held that travel time should be compensated at no more than 50% of the attorney's hourly rate. See, e.g., In re Agent Orange, 818 F.2d 226, 238 (2d Cir. 1987) (stating that "it is not unusual for hours of travel time . . . to be compensated at lower rates"); Luciano v. Olsten Corp., 925 F. Supp. at 965; Cruz v. Local Union No. 3, 34 F.3d at 1161. This Court agrees and determines that plaintiff's counsel should be compensated for travel time at 50% of their billable rates for reasonable travel time.[8]

Accordingly, the Court has determined that there are several entries where time for travel may

---

[8]The Court's task of allocating the proper amount of time for travel is made difficult because in a number of instances, counsel has included in one single entry time spent on a variety of tasks. This indiscriminate combining together of different activities has been criticized by a number of courts. See, e.g., Williamsburg Fair Housing Comm. v. N.Y. City Housing Auth., No. 76 CV 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005); Williams v. N.Y. City Housing Auth., 975 F. Supp. 317, 327 (S.D.N.Y. 1997) (stating that tasks should not be lumped into one time sheet entry "because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided"); Wilder v. Bernstein, 975 F. Supp. 276, 286 (S.D.N.Y. 1997) (stating that "it is the responsibility of the applicant to make separate time entries for each activity") (quoting In re Poseidon Pools of America, Inc., 180 B.R. 718, 731 (Bankr. E.D.N.Y. 1995) (internal citation omitted) (criticizing "lumping" of activities in a single entry)); see also Role Models America v. Brownlee, 353 F.3d 962, 971–73 (D.C. Cir. 2004)); In re Olson, 884 F.2d 1415, 1428 (D.C. Cir. 1989); Keith v. Volpe, 644 F. Supp. 1317, 1322 (C.D. Cal. 1986) (criticizing "serial billing"), cert. denied, 493 U.S. 813 (1989)). Courts have noted that when there are "such inadequate descriptions the court cannot 'determine with a high degree of certainty,' as it must, that the billings are reasonable. Therefore, the court must estimate the reduction to be made because of such insufficient documentation." In re Olson, 884 F.2d at 1428–29 (internal citations omitted). As the court in Keith v. Volpe, noted, "The court's burden is made only more difficult by the need to make an award from over-generalized billing information." 644 F. Supp. at 1322.

have been inappropriately billed at the attorneys' full rate, rather than at 50% as required by the case law. The Court has therefore adjusted for this by estimating a reasonable time for travel and compensating counsel at a rate of 50% of the rate found by the Court to be reasonable for that attorney. (See Table A infra).

Based on these adjustments, the Court concludes that a reasonable portion of the fee to be allocated to Ms. Katzenberg is 36.68 hours - 5.4 hours expended by Mr. Kalish, 31.13 hours expended by Mr. Gelfarb, and 0.15 hours expended by Mr. Moss.

Using these adjusted times and multiplying them by the revised hourly rates for counsel, the Court concludes that a reasonable fee for the time spent on Ms. Katzenberg's claim would be $7,719.12. The Court has also examined the expenses submitted by counsel and concludes that a reasonable figure for expenses would be half of the requested amount of $182.75, or $91.37.

## TABLE A

| Name of Attorney | Invoice Date | Rate Requested | Rate Adjusted | Hours Requested | Hours Adjusted | Fee Requested | Fee Awarded |
|---|---|---|---|---|---|---|---|
| DBG | 11/30/04 | 290.00 | 200.00 | 2.90 | 1.45 | 841.00 | 290.00 |
| DBG | 11/30/04 | 290.00 | 200.00 | 0.90 | 0.45 | 261.00 | 90.00 |
| DBG | 11/30/04 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 11/30/04 | 290.00 | 200.00 | 0.40 | 0.20 | 116.00 | 40.00 |
| DBG | 12/31/04 | 290.00 | 200.00 | 0.20 | 0.10 | 58.00 | 20.00 |
| DBG | 12/31/04 | 290.00 | 200.00 | 0.30 | 0.00 | 87.00 | 0 |
| DBG | 12/31/04 | 290.00 | 200.00 | 0.50 | 0.00 | 145.00 | 0 |
| DBG | 12/31/04 | 290.00 | 200.00 | 0.80 | 0.40 | 232.00 | 80.00 |
| DBG | 12/31/04 | 290.00 | 200.00 | 0.90 | 0.45 | 261.00 | 90.00 |

| Name of Attorney | Invoice Date | Rate Requested | Rate Adjusted | Hours Requested | Hours Adjusted | Fee Requested | Fee Awarded |
|---|---|---|---|---|---|---|---|
| DBG | 12/31/04 | 290.00 | 200.00 | 0.20 | 0.10 | 58.00 | 20.00 |
| DBG | 1/31/05 | 290.00 | 200.00 | 0.10 | 0.05 | 29.00 | 10.00 |
| GNM | 1/31/05 | 410.00 | 325.00 | 0.10 | 0.05 | 41.00 | 16.25 |
| MLK | 1/31/05 | 410.00 | 325.00 | 0.30 | 0.10 | 123.00 | 32.50 |
| DBG | 2/28/05 | 290.00 | 200.00 | 1.40 | 0.00 | 406.00 | 0 |
| MLK | 2/28/05 | 410.00 | 325.00 | 1.50 | 0.00 | 615.00 | 0 |
| DBG | 2/28/05 | 290.00 | 200.00 | 2.40 | 0.00 | 696.00 | 0 |
| MLK | 2/28/05 | 410.00 | 325.00 | 1.00 | 0.00 | 410.00 | 0 |
| MLK | 2/28/05 | 410.00 | 325.00 | 0.30 | 0.15 | 123.00 | 48.75 |
| DBG | 2/28/05 | 290.00 | 200.00 | 1.70 | 0.85 | 493.00 | 170.00 |
| DBG | 2/28/05 | 290.00 | 200.00 | 1.20 | 0.00 | 348.00 | 0 |
| DBG | 2/28/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 48.75 |
| DBG | 2/28/05 | 290.00 | 200.00 | 0.90 | 0.00 | 261.00 | 0 |
| MLK | 2/28/05 | 410.00 | 325.00 | 0.30 | 0.00 | 123.00 | 0 |
| DBG | 2/28/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 48.75 |
| MLK | 3/31/05 | 410.00 | 325.00 | 0.50 | 0.25 | 205.00 | 65.00 |
| MLK | 3/31/05 | 410.00 | 325.00 | 0.70 | 0.00 | 287.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 2.20 | 0.00 | 638.00 | 0 |
| MLK | 3/31/05 | 410.00 | 325.00 | 1.30 | 1.20 | 533.00 | 390.00 |
| MLK | 3/31/05 | 410.00 | 325.00 | 1.20 | 0.00 | 492.00 | 0 |
| MLK | 3/31/05 | 410.00 | 325.00 | 1.20 | 0.00 | 492.00 | 0 |
| MLK | 3/31/05 | 410.00 | 325.00 | 1.20 | 0.00 | 492.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 2.80 | 1.00 | 812.00 | 200.00 |
| DBG | 3/31/05 | 290.00 | 200.00 | 1.00 | 0.00 | 290.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 0.90 | 0.00 | 261.00 | 0 |

| Name of Attorney | Invoice Date | Rate Requested | Rate Adjusted | Hours Requested | Hours Adjusted | Fee Requested | Fee Awarded |
|---|---|---|---|---|---|---|---|
| DBG | 3/31/05 | 290.00 | 200.00 | 0.40 | 0.00 | 116.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 3.40 | 0.00 | 986.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 3.20 | 0.15 | 928.00 | 30.00 |
| DBG | 3/31/05 | 290.00 | 200.00 | 3.20 | 0.00 | 928.00 | 0 |
| DBG | 3/31/05 | 290.00 | 200.00 | 0.30 | 0.00 | 87.00 | 0 |
| DBG | 4/30/05 | 290.00 | 200.00 | 3.40 | 1.13 | 986.00 | 226.00 |
| DBG | 5/31/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| MLK | 5/31/05 | 410.00 | 325.00 | 0.40 | 0.20 | 164.00 | 65.00 |
| DBG | 5/31/05 | 290.00 | 200.00 | 0.80 | 0.40 | 232.00 | 80.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 1.80 | 0.90 | 522.00 | 180.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 2.10 | 1.05 | 609.00 | 210.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.10 | 0.05 | 29.00 | 10.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.40 | 0.20 | 116.00 | 40.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 4.80 | 2.40 | 1,392.00 | 480.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 3.40 | 1.70 | 986.00 | 340.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 4.30 | 2.15 | 1,247.00 | 430.00 |
| MLK | 6/30/05 | 410.00 | 325.00 | 0.20 | 0.10 | 82.00 | 32.50 |
| DBG | 6/30/05 | 290.00 | 200.00 | 2.80 | 1.40 | 812.00 | 280.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 5.40 | 2.00 | 1,566.00 | 400.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 3.60 | 1.30 | 1,044.00 | 260.00 |
| MLK | 6/30/05 | 410.00 | 325.00 | 0.60 | 0.30 | 246.00 | 97.50 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.90 | 0.45 | 261.00 | 90.00 |

| Name of Attorney | Invoice Date | Rate Requested | Rate Adjusted | Hours Requested | Hours Adjusted | Fee Requested | Fee Awarded |
|---|---|---|---|---|---|---|---|
| MLK | 6/30/05 | 410.00 | 325.00 | 2.30 | 1.15*[9] | 943.00 | 186.87 |
| MLK | 6/30/05 | 410.00 | 325.00 | 1.00 | 0.50 | 410.00 | 162.50 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.50 | 0.25 | 145.00 | 50.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 2.90 | 1.45* | 841.00 | 145.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 0.70 | 0.35 | 203.00 | 70.00 |
| DBG | 6/30/05 | 290.00 | 200.00 | 3.50 | 1.75 | 1,015.00 | 350.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.80 | 0.40 | 232.00 | 80.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 1.30 | 0.65 | 377.00 | 130.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.20 | 0.20 | 58.00 | 40.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 7/31/05 | 290.00 | 200.00 | 0.20 | 0.10 | 58.00 | 20.00 |
| MLK | 8/31/05 | 410.00 | 325.00 | 0.80 | 0.00 | 328.00 | 0 |
| DBG | 8/31/05 | 290.00 | 200.00 | 2.10 | 0.00 | 609.00 | 0 |
| DBG | 8/31/05 | 290.00 | 200.00 | 1.90 | 0.00 | 551.00 | 0 |
| GNM | 8/31/05 | 410.00 | 325.00 | 0.20 | 0.10 | 82.00 | 32.50 |
| DBG | 8/31/05 | 290.00 | 200.00 | 2.40 | 1.20 | 696.00 | 240.00 |
| MLK | 8/31/05 | 410.00 | 325.00 | 0.70 | 0.35 | 287.00 | 113.75 |
| DBG | 8/31/05 | 290.00 | 200.00 | 3.80 | 1.40 | 1,102.00 | 280.00 |
| DBG | 8/31/05 | 290.00 | 200.00 | 1.10 | 0.55 | 319.00 | 110.00 |
| DBG | 8/31/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 9/28/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |

[9]These entries include travel time which the court has calculated at the adjusted rate of 50% of the attorney's adjusted hourly rate.

| Name of Attorney | Invoice Date | Rate Requested | Rate Adjusted | Hours Requested | Hours Adjusted | Fee Requested | Fee Awarded |
|---|---|---|---|---|---|---|---|
| DBG | 9/28/05 | 290.00 | 200.00 | 0.40 | 0.10 | 116.00 | 20.00 |
| MLK | 9/28/05 | 410.00 | 325.00 | 0.20 | 0.10 | 82.00 | 32.50 |
| MLK | 9/28/05 | 410.00 | 325.00 | 0.30 | 0.15 | 123.00 | 48.75 |
| DBG | 9/28/05 | 290.00 | 200.00 | 0.60 | 0.30 | 174.00 | 60.00 |
| DBG | 9/28/05 | 290.00 | 200.00 | 0.30 | 0.15 | 87.00 | 30.00 |
| DBG | 9/28/05 | 290.00 | 200.00 | 0.40 | 0.20 | 116.00 | 40.00 |
| MLK | 9/28/05 | 410.00 | 325.00 | 0.20 | 0.10 | 82.00 | 32.50 |
| DBG | 9/28/05 | 290.00 | 200.00 | 0.50 | 0.25 | 145.00 | 50.00 |
| MLK | 9/28/05 | 410.00 | 325.00 | 1.50 | 0.75 | 615.00 | 243.75 |
| TOTAL: | | | | | 36.68 | | $7,719.12 |

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
August 30, 2007

Cheryl L. Pollak
United States Magistrate Judge

23