UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HARVEY KATZENBERG and
PEARL KATZENBERG,

        Plaintiffs,

v.

DERVAL LAZZARI, as Trustee of the Acme
American Repairs, Inc. Pension Trust; ACME
AMERICAN REPAIRS, INC.; and ACME
AMERICAN REPAIRS, INC. PENSION TRUST,

        Defendants.

No. 1-04-cv-5100

FINDINGS OF FACT,
CONCLUSIONS OF LAW, and
JUDGMENT

        Plaintiff Harvey Katzenberg and his wife Pearl[1] brought this ERISA action on November 24, 2004, seeking to require defendants to pay benefits from a defined benefit pension plan, to provide a summary plan description (SPD), and to pay their attorney fees. Defendants by answer and counterclaims, as amended, have raised several defenses, including laches, waiver, promissory estoppel, and breach of fiduciary duty by Katzenberg. Katzenberg in reply contends the three-year ERISA statute of limitations bars most of the defendants' defenses and counterclaims.

        Upon full review of the testimony and exhibits, consisting of extensive financial records of the Pension Plan and other business records, the court now enters judgment dismissing with prejudice all of Katzenberg's claims, granting defendants' counterclaim to extinguish Katzenberg's pension claim, and denying all requests for attorney fees. The parties

---

[1] Before trial, Pearl Katzenberg agreed with defendants to settle her pension claims, so they are not here addressed. References to "Katzenberg" are to plaintiff Harvey Katzenberg only.

1

shall bear their own costs.

Previous Summary Judgment Rulings. In analyzing the evidence and deciding the contested issues, the court has benefitted from the extensive Report and Recommendation filed by United States Magistrate Judge Cheryl L. Pollak, upheld in its entirety by United States District Judge Carol Amon when no objections were filed. Those rulings denied most of Katzenberg's motions for summary judgment based on a large summary judgment record, but those rulings importantly did strike the defendants' pleaded defense of "oral waiver of benefits," granted defendants' motion to amend, and held that Katzenberg's preparation of year-end pension asset statements and other financial records were not mere ministerial acts but fell within his fiduciary duties as pension trustee.

Now before the court is defendants' post-trial motion to file further amendments to their answer and counterclaims, allegedly to conform to the proofs proffered at trial. The court grants this third motion to amend, thus allowing defendants to plead more specifically their defenses of waiver, promissory estoppel, and laches. But defendants did not sustain their burden of proof on those affirmative defenses.

The summary judgment rulings determined there was no legal basis for defendants' claim that plaintiff orally waived his right to receive a pension during negotiations in 2001 and 2002 involving defendants' accountant Thomas Gaugh, Katzenberg himself, and his former Acme co-owner, Birinder Madan. Although Madan did at the time relinquish part of his own pension, and although Gaugh understood Katzenberg too had then relinquished his right to receive a pension, the court now concludes, as did Magistrate Judge Pollak and Judge Amon, that defendants cited no persuasive authority nor did they have reliable evidence to prove that

promissory estoppel should bar the ERISA claim. The circumstances were not so extraordinary as to support the defense of promissory estoppel. See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 85 (2nd Cir. 2001). Furthermore, the court finds no evidentiary or legal support for defendants' contention that Katzenberg brought his lawsuit so long after allegedly waiving his pension that the equitable doctrine of laches should bar his recovery. No party was unfairly prejudiced by the approximate two-year delay between the oral-wavier circumstances alleged by defendants and Katzenberg's filing of this ERISA lawsuit in November of 2004.

The court is left with six fundamental issues for trial that were originally pleaded and correctly identified by Magistrate Judge Pollak:

I. Did Katzenberg prove his entitlement to receive the pension he claims is due him?

II. Did Katzenberg prove he was deprived of receiving an SPD after he retired?

III. Are defendants' affirmative defenses barred by the ERISA statute of limitations?

IV. Did Katzenberg commit breaches of his fiduciary duties as plan trustee?

V. What remedy is appropriate for Katzenberg's breaches of duty?

VI. Must any party pay other parties' attorney fees and costs?

These issues will now be decided based on the stipulated facts and other facts proved by the trial evidence.

AGREED FACTS. The following facts were stipulated in the Joint Pretrial Order.

A. Katzenberg is a natural person residing in the State of Arizona, county of Maricopa.

B. Acme American Repairs is a corporation organized and existing under the

laws of the State of New York with its principal place of business located in the State and City of New York, County of Kings.

C. From 1995 through on or about March 21, 2001, Katzenberg owned 50% of the outstanding common stock of Acme American Repairs.

D. The Plan is a qualified pension trust residing in the State of New York.

E. On or about December 28, 2001, the Plan was frozen.

F. Acme American Repairs is the administrator of the Plan.

G. Lazzari is a natural person residing in the State and City of New York, County of Queens.

H. Lazzari is a trustee of the Plan.

I. Acme American Repairs is engaged in the business of repairing commercial food service and kitchen equipment, including, without limitation, repair of equipment under manufacturer's warranty. Acme American Repairs has been engaged in this business for over 60 years.

J. Katzenberg, while he was President of Acme American Repairs, served as a Plan trustee.

K. Katzenberg began working for Acme American Repairs in or around 1977, eventually becoming an owner and the President and Chief Executive Officer of Acme American.

L. In or around 2001, Katzenberg retired from Acme American.

M. The Plan is a defined benefit plan.

N. One or more adoption agreements have been enacted with respect to the Plan.

O. The Plan "Participant Benefits Statements" for Katzenberg as of December 31, 1999 and December 31, 2000 list Katzenberg as a participant in the Plan who would be entitled to receive $2,393.64 per month upon attaining age 65.

Other Facts.   Beyond these agreed facts, the court finds these additional facts based on the extensive record of documents received in evidence and its determination of the credibility of witnesses who testified at trial.  Except for rulings made during the bench trial, the court denies all objections to the parties' proffered exhibits and objections made during testimony on which rulings were reserved.  The court has, however, considered the objections in determining the weight to be given the exhibits and testimony received over objection.

Katzenberg's own testimony has been given no weight on disputed factual matters.  He was evasive during cross examination.  He exhibited a convenient memory of conversations; he denied without credible explanation the fact that he was for years the only trustee of the pension plan who had the knowledge and experience to conduct its affairs and maintain its financial records.  He was unable to explain the pension plan records that demonstrated he had regularly overstated its assets.  He had no satisfactory answer for why he had taken out at least $30,000 once and $24,000 a second time that were for his own personal account or the Acme corporate account and never repaid.  His involvement with his wife Pearl in a separate corporation that greatly overcharged defendants for insurance coverage was not considered as substantive evidence but cast further doubt on his honesty.  The evidence presented in exhibits and through testimony of defendants' witnesses was not diminished by plaintiff Harvey Katzenberg's testimony.

In contrast, Judy Siegel and Morris Glickman, from the pension administration

5

firm of Hallman & Lorber, gave credible testimony concerning the financial records of the Pension Trust and the fact that Katzenberg alone provided information on which they depended. Moreover, the court finds highly credible the testimony of Thomas Gough, the public accountant who uncovered Katzenberg's unauthorized theft of pension fund assets in the period 1998 to 2001. Gaugh was unshaken by cross examination. He had no motive to exaggerate and did not deviate from providing accurate testimony.

Granted, Birinder Madan, who was co-owner of defendant Acme Company and a co-trustee of the Pension Plan, did not testify. But Madan had always been in charge of defendant Acme's personnel and field operations only and left the financial management to Katzenberg, who had been a public accountant. Moreover, the witness Derval Lazzari, who purchased Katzenberg's stock in the Acme Companies and did testify, had no accounting expertise, responsibility, or useful knowledge during the years from 1998 to 2001. Katzenberg, the long-time President of Acme and primary keeper of the pension plan records, was left alone during those years to conceal from the actuaries and accountants his defalcations that brought about the fragile financial condition of the Pension Plan. When he left the company, he left its records and the Pension Plan in shambles.

With that assessment of the weight of the evidence proffered at trial, the court finds the following additional facts based on the greater weight of all the credible evidence presented by the parties.

Katzenberg committed serious, costly breaches of his fiduciary duties owed as trustee of the pension plan and President of Acme, the plan administrator. He provided the Plan actuaries and accountant inaccurate reports of the Plan assets for several years, including 1998,

1999, and 2000, by concealing the correct numbers and loans he had made to himself and his own companies that were not repaid. This caused the Pension Plan to be underfunded by more than $150,000. He reported as Pension Fund assets insurance premiums that were overcharged and incorrectly described as cash assets.

When Pension Plan assets were overstated and at times withdrawn for Katzenberg's own account or placed in Acme's accounts, Katzenberg was directly benefitting himself and violating his fiduciary duties as Pension Plan trustee.

In 1998, Katzenberg overstated Pension Plan asset value by about $25,000; in 1999, by about $30,000; and in 2000, by about $70,000. In 2000, Katzenberg made an unauthorized transfer of about $24,000 to Acme's account. Later in 2000, Katzenberg withdrew $30,000 from the Pension Plan account and never repaid it. Probably Katzenberg paid himself and Acme other amounts that were unauthorized, with those transfers hidden within the Pension Plan records that Katzenberg alone maintained. The court finds Katzenberg probably skimmed from the Pension Plan assets of an amount equal to or even greater than the amount needed to fund his own pension benefits.

Neither co-trustee Madan nor any of the defendants had as much information about the Pension Plan, its provisions, and what would be in an SPD, as Katzenberg himself had obtained during his years as President of Acme and principal Plan trustee. Plaintiff had no need for an SPD at the time he resigned; the responsibility for preparing and disclosing to others a Plan SPD, on request, was his own.

I. <u>What Pension is Due Katzenberg</u>? The parties stipulated that at the end of 1999 and 2000, Katzenberg would have been entitled to receive $2,393.64 per month upon

7

attaining age 65, based upon the "Participant Benefit Statements" then in effect. But that was before Gaugh discovered Katzenberg's breaches of fiduciary duties and Katzenberg's concealment of unauthorized withdrawals of pension fund assets. When the court undertakes to reduce the amounts Katzenberg could legitimately receive after he alone had diminished the trust assets of the Plan, the court is unable to find a specific lower amount to which he would be entitled. Katzenberg had the burden to prove his claim for the amount the Plan owed him. He should have provided robust opinion testimony and documentation to prove his entitlement to a monthly pension amount or lump sum pension payment in a specific amount. He did not.

Granted, the parties disagree on whether plaintiff was entitled to receive a monthly pension in March of 2002, one year after he retired as he now requests, or was required to wait until age 65. But plaintiff fell far short of proving the amount the Pension Fund should pay monthly, whether now or at age 65. He did not satisfy his burden of proof of his ERISA claim.

The court denies Katzenberg's lawsuit claim because he failed to prove the specific amount, if any, that the Pension Plan should be required to pay him as a monthly benefit or lump sum payment.

II. <u>Katzenberg Deprived of an SPD</u>. Katzenberg did not prove defendants violated ERISA requirements by failing to provide him an SPD. The record strongly suggest the Pension Plan trustees never prepared an SPD. Whose fault was that? Primarily Katzenberg's own fault from the time he became President of Acme and the principal Plan Trustee to the year 2001 when he resigned as trustee. Yes, the SPD should have been made available for beneficiaries who requested it. Defendants should immediately and in the future comply with 29

8

U.S.C. section 1132 (c) and provide an SPD whenever past or future Pension Plan beneficiaries request Plan documents. But Katzenberg has not proved anyone except Katzenberg himself violated ERISA in that respect. The court denies Katzenberg's claim that defendants owe him $100 per day from November 24, 2004, or a total of over $149,8000.

III. <u>The ERISA Statute of Limitations.</u> Katzenberg contends defendants' affirmative defenses and counterclaims are barred by the ordinary three-year ERISA statute of limitations. The court disagrees, finding that Katzenberg by fraudulent conduct concealed the facts on which those defenses are based. The statute provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

The six-year statue of limitations, not the three-year period, should be applied when a fiduciary has (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) has engaged in acts to hinder the discovery of a breach of fiduciary duty. <u>Caputo v. Pfizer</u>, 267 F.3d 181, 190 (2nd Cir. 2001).

So the six-year statute applies when fraud <u>or</u> concealment precludes discovery of

9

a fiduciary's breach or violation. The evidence plainly proves Katzenberg both committed fraud and concealed his wrongful breaches of trust. This enables defendants to prove their defenses based on circumstances and events back to 1998, six years before plaintiffs commenced this lawsuit.

IV. <u>Breaches of Fiduciary Duties</u>. Defendants proved by clear and convincing evidence that Katzenberg breached his fiduciary duties as Pension Plan trustee from 1998 to March 21, 2001 when he retired after selling his 50% interest in Acme American Repairs to defendant Derval Lazzari.

Katzenberg concealed from defendants and Pension Plan participants the false information he provided to Plan actuaries and accountants about Plan Assets. He concealed his unauthorized use of Plan funds for his personal accounts and Acme corporate finances. He overcharged the Pension Fund and Acme for insurance premiums, and incorrectly reported insurance as Plan assets. He overstated Plan Assets by at least $125,000 causing the Pension Plan to be underfunded. He transferred $24,000 of Plan assets to Acme in 2000 without proper authority, and later $35,000 without repaying that amount, though now claiming it was a loan that was to be repaid. This conduct constituted fraud committed against the Pension Plan.

Sections 404(a)(1) and 409 (a) of ERISA impose on Pension Plan fiduciaries, like Katzenberg, when serving as co-trustee, several clear requirements:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and --
> (A) for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; . . .
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...

29 U.S.C. 1104(a)(1). A trustee must act 1) solely in the interests of the participants and

beneficiaries; 2) "for the exclusive purpose of" providing benefits to them, and 3) act with the care of a "prudent man." Donovan v. Bierwirth, 680 F.2d 263, 271 (2nd Cir. 1982).

These duties based on the common law of trust, have been described as "the highest known to the law" (emphasis added). Flanigan v. General Elec. Co., 242 F.3d 78, 86 (2nd Cir. 2001). An ERISA fiduciary must manage the plan with "an eye single" to the interest of the plan's participants and beneficiaries. Donovan, supra.

Section 409 (a) imposes liability on a plan fiduciary who breaches any of the responsibilities, obligations or duties imposed upon the fiduciary. 29 U.S.C. 1109 (a). The breaching fiduciary is "personally liable to make good to such plan any losses to the plan resulting from each such breach. . . and shall be subject to such other equitable or remedial relief as the Court may deem appropriate... ."

Katzenberg's conduct as Pension Plan trustee from 1998 to 2001 violated his fiduciary duties and subject him to liability. The question that remains is what is the appropriate remedy for the defendants who have proved their counterclaim and defense alleging Katzenberg's breaches of fiduciary duty.

V. Remedy. Defendants proved the Pension Plan has been severely damaged and should be made whole. The court concludes that the appropriate remedy for defendant in this case is for plaintiff Harvey Katzenberg to forfeit his pension and be deprived of any pension benefits. See Gaudet v. Sheet Metal Workers Nat'l Pension Fund, 216 F. Supp. 2d 582 (E.D. La. 2002); Brovarski v. Local 1205, Internat'l Bhd. of Teamsters Union, 1998 WL 765141 (E.D.N.Y. 1998); United States v. Local 1804-1 Internat'l Longshoremen's Ass'n., 812 F. Supp. 1303 (S.D.N.Y. 1993). The court directs the defendants to amend the Pension Plan to provide that Harvey Katzenberg has forfeited his right to receive any benefits because of the fraud he

committed against it.

This forfeiture remedy best serves equity and achieves justice for defendants, who are relieved of the burden to correct the underfunding of the Pension Plan that Katzenberg alone caused. This remedy is also required because Katzenberg failed to prove the precise lump sum payment or monthly payment that he otherwise would have been entitled to receive, after an actuary would take into account the Pension Plan losses caused by Katzenberg's fraudulent conduct.

VI. <u>Attorney fees</u>. The court exercises its discretion to require the parties to bear their own costs and attorney fees. Defendants failed to prove their oral waiver theory, promissory estoppel claim, and laches defense. Katzenberg did not succeed in his ERISA action. The forfeiture remedy adequately achieves justice between the parties without extending the litigation to require Katzenberg to pay defendants' attorney fees.

<u>Judgment</u>. The clerk of court shall enter judgment dismissing plaintiff Harvey Katzenberg's claims, and in favor of the defendants Derval Lazzari, Acme American Repairs, Inc., and Acme American Repairs, Inc. Pension Trust declaring that Harvey Katzenberg is not entitled to any lump sum or monthly payment from the Acme American Repairs, Inc. Pension Plan. He did not prove he is entitled to any specific amount, and he committed serious breaches of his fiduciary duty as Trustee of the Pension Plan.

No costs or attorney fees are awarded to any party.

SO ORDERED.

Dated this 24th day of February, 2010.

*[signature]*
CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT